## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| | **:** | |
| **v.** | **:** | **Case No. 24-MJ-206 (RMM)** |
| | **:** | |
| **DEON BARRON LACEY,** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |

## UNITED STATES' MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its oral motion that Defendant Deon Barron LACEY be detained pending trial pursuant to 18 U.S.C. §§ 3142(f)(1)(C). The United States requests that the following points and authorities, as well as any other facts, arguments and authorities presented at the detention hearing, be considered in the Court's determination regarding pre-trial detention.

## PROCEDURAL HISTORY AND RELEVANT FACTS

On March 14, 2022, Kansas Highway Patrol ("KHP") Trooper Krause conducted a traffic stop on a 2007 Lexus bearing California temporary tags. When Trooper Krause first observed the Lexus, it was driving 45mph in a 65mph zone with its high-beams on and, when the high-beams were turned off, Trooper Krause observed that one of the headlights was working.  Trooper Krause stopped the vehicle, identified LACEY through his Maryland Driver's license, and later identified the sole passenger of the Lexus as Anthony Brown.

During the stop, Trooper Krause observed four cellular telephones in the front compartment of the Lexus as well as numerous energy drinks.  When Trooper Krause asked LACEY how he came to be driving a Lexus registered to another person in California when he himself had a Maryland

Driver's license, LACEY stated that he picked the car up from his girlfriend's cousin in Long Beach. Trooper Krause reported that LACEY noticeably paused prior to saying "Long Beach," and that the palms of his hands were sweaty. Trooper Krause conducted a registration check and discovered that the Lexus was registered to Manuel Ramirez in Downey, California.[1]

Trooper Krause suspected that LACEY and Brown were engaged in drug trafficking based on Lacey's driving prior to the traffic stop, Trooper Krause's observations during the traffic stop, the inconsistency in LACEY's story regarding the car, and the presence of four cell phones for two passengers. Trooper Krause asked for LACEY's consent to search the Lexus, which LACEY refused. Trooper Krause, believing that he already possessed reasonable articulable suspicion to search the vehicle, then walked his K9 officer around the Lexus. The K9 alerted to the presence of narcotics.

Trooper Krause then searched the Lexus and observed what appeared to be an aftermarket compartment extending approximately eight inches into the trunk from the back of the rear seats. Trooper Krause could see that carpet had been glued to this aftermarket compartment and he could see spray foam insulation on the sides of the compartment. Recognizing immediately that this compartment was not original to the vehicle, Trooper Krause attempted to locate the access point. Trooper Krause found the access point behind the arm rest for the rear seats and opened the latch to the compartment. Inside the compartment, Trooper Krause discovered 35 packages each approximately one kilogram in size. Trooper Krause then placed LACEY and Brown under arrest and LACEY, indicating to the packages, stated "it was me."

LACEY and Brown were transported to the patrol office for processing and LACEY was later taken to an interview room where he was advised of, and waived, his Miranda rights. LACEY

---

[1] Downey, California is located approximately 15 miles north of Long Beach and is equidistant between Long Beach and Los Angeles.

informed Trooper Krause that he did not know how to open the secret compartment, but also stated "whatever you find, it's me." LACEY then invoked his right to counsel and refused to answer additional questions.  DEA Task Force Officer ("TFO") Moore responded to the patrol office and conducted a field test of the 35 seized packages.  30 of the 35 packages had the word "Alacran"[2] written on them.  TFO Moore tested three of the packages with TruNarc, all of which tested positive for the presence of cocaine.  The total weight of the 35 packages was 77 pounds. Subsequent DEA laboratory testing confirmed an actual weight of 15.955 kilograms of cocaine based on weight and purity.  Search warrants were obtained for the four cellular telephones, which revealed communications related to drug trafficking by both LACEY and Brown.

LACEY and Brown were charged in Kansas state court with Distribution of more than 1 kilogram of narcotics and released on bond. Upon learning of the arrest, the United States Attorney's Office for the District of Kansas alerted state prosecutors that it would be taking the case. Shortly thereafter, the assigned AUSA was contacted by Brown's counsel who confirmed that the case was going to be brought in federal court. On July 12, 2022, LACEY and Brown were indicted in the United States District Court for the District of Kansas Case Number 6:22-cr-10046-EFM and charged with Possession with Intent to Distribute Five Kilograms or More of Cocaine, in violation of 21 U.S.C. §§ 841(a)(1), and 841(b)(1)(A), and Interstate Travel in Aid of Racketeering, in violation of 18 U.S.C. § 1952(a)(1). That same day the State case against them was dismissed. Neither LACEY nor Brown has appeared in the District of Kansas to be arraigned on those charges since the Indictment was returned. The only docket entries for Case Number 6:22-cr-10046-EFM are the Indictment and Brown's Attorney's Notice of Appearance.

---

[2] The origin of the packages is unknown, but "Alacran" is one of the words used for "Scorpion" in Spanish, and the word has been linked to drug cartels operating in Mexico and Columbia.

As reported in Metropolitan Police Department ("MPD") Criminal Case Number ("CCN") 24-093-676, Defendant was arrested at approximately 6:35am on June 20, 2024.  Defendant was driving a 2019 Toyota Highlander when he was stopped at 400 9th Street, Northeast for driving with no headlights on.



Defendant's speech was slurred and MPD Officer Barroso asked if he had been drinking.  Defendant said that he had not.  Defendant provided registration for the vehicle as requested but could not provide a driver's license.  Instead, Defendant presented a Maryland Identification Card issued in the name of Cory Jermaine Bell with a birth date in 1983. During the interaction with officers, Defendant had difficulty communicating in complete sentences.

Based on their observations, Defendant was stepped out of the vehicle.  Defendant initially stated that he had consumed one beer, then stated it was two beers, but could not tell officers where he had consumed them.  Officers asked the Defendant if he had taken any medication, and Defendant stared at them until the officer repeated "Mr. Bell?" twice.  Defendant then stated he had consumed no medication.



Based on his behavior, Defendant was placed under arrest for driving under the influence. Officers then conducted a search of the Toyota Highlander. During that search, officers discovered a black duffel bag behind the driver's seat.



Inside the black duffel bag, officers found a plastic sandwich bag containing what appeared to be rocks of cocaine base (right) as well as a plastic sandwich bag containing apparent cocaine powder (left).



Officers also discovered a black plastic bag containing numerous mylar bags of marijuana packaged for resale. Defendant was then transported to MPD's Second District Station for processing and an inventory was conducted of the black duffel bag.

The inventory revealed a marijuana packaged in mylar bags, THC infused vape cartridges, a digital scale, and documentation which appears to be a drug ledger.



The black duffel bag also contained:

- 40.5 grams of white powder and white rocklike substance which field tested positive for cocaine and cocaine base, as well as 19.5 grams of white rocklike substance that field tested positive for opiates and amphetamine.



- 31 blue pills stamped M30, presumed to be either Oxycontin or Fentanyl, as well as 9 Opana extended-release Oxy Morphine pills.



- A thirteen-round Glock magazine chambered for 9mm ammunition as well as twelve rounds of 9mm ammunition.



During processing, MPD Officers fingerprinted Defendant at which time they determined that he was not "Cory Jermaine Bell," but was, in fact Deon Barron LACEY.  This led to the discovery of the outstanding warrant from the District of Kansas based on Defendant's Indictment in the District of Kansas Case Number 6:22-cr-10046-EFM. Officers approached Defendant in the cell block and informed him that the fingerprints had made his arrest more "complicated." Defendant joked that it was probably more complicated because the date of birth for his fingerprints didn't match the identification he'd given to the officers.

Defendant was charged in D.C. Superior Court with Driving Under the Influence of Alcohol or Drugs, Operating a Vehicle While Impaired, and Possession with Intent to Distribute Cocaine on June 20, 2024.  Defendant was brought before this Court on Rule 5 proceedings on June 21, 2024.

## ARGUMENT

As a preliminary matter, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing."  18 U.S.C. § 3142(f). The parties may proceed by way of proffer and hearsay is permitted. Id.; United

States v. Smith, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the United States is not required to "spell out in precise detail how the United States will prove its case at trial, nor specify exactly what sources it will use." United States v. Martir, 782 F.2d 1141, 1145 (2d Cir. 1986); United States v. Williams, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should neither be a mini trial, nor used as a subterfuge to obtain discovery. Smith, 79 F.3d at 1210; Williams, 798 F. Supp. at 36.

### 1.  **The United States' Bases for Detention**

The United States seeks pretrial detention pursuant to 18 U.S.C. § 3142(f)(1)(C), because Defendant is charged with a Controlled Substances Act offense for which he faces a sentence of more than ten years in prison.  In fact, the lead charge carries a mandatory minimum sentence of ten years' imprisonment. Pursuant to 18 U.S.C. § 3142(e)(3)(A), this offense carries a rebuttable presumption in favor of pretrial detention. The rebuttable presumption "'operate[s] at a minimum to impose a burden of production on the defendant to offer some credible evidence contrary to the statutory presumption.'" Id. at 124-25 (quoting United States v. Alatishe, 768 F.2d 364, 371 (D.C.Cir.1985) (original emphasis); see also United States v. Portes, 786 F.2d 758, 764 (7th Cir.1985) (the presumption requires the defendant to come "forward with some evidence that he will not flee or endanger the community if released") (internal quotation and citation omitted)). As this Court has held, the defendant must present evidence to rebut the presumption. United States v. Lee, 195 F. Supp. 3d 120, 124, 125 (D.D.C. 2016).

Moreover, even if Defendant presents evidence to rebut the presumption, the presumption does not disappear entirely. Id. at 125 (citing United States v. Ali, 793 F. Supp. 2d 386, 388 n.2 (D.D.C. 2011) (noting that the Bail Reform Act requires the Court to consider the rebuttable presumption as a factor even if the Defendant "produces credible evidence" to rebut it); United States v. Bess, 678 F. Supp. 929, 934 (D.D.C. 1988) ("[The presumption] is incorporated into the § 3142(g)

9

factors considered by the court when determining whether conditions of release can be fashioned or whether the defendant must be detained pretrial.")) The rebuttable presumption remains as a factor that must be considered by the Court, because it "'reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial.'" Id. (quoting United States v. Stone, 608 F.3d 939, 945-46 (6th Cir. 2010)) (emphasis added).

Here, Defendant cannot rebut the presumption in favor of pretrial detention. Defendant has been evading a federal arrest warrant for nearly two years based on charges of interstate cocaine trafficking and was arrested in the District of Columbia with distribution quantities of cocaine as well as other substances. Even if Defendant could rebut the presumption in favor of detention, there are no combination of conditions which could ensure the safety of the community or Defendant's presence in Court if he were to be released.

2.     **The Bail Reform Act Factors All Favor Detention Given Defendant's Risk of Flight and Danger to the Community**

As the Court is aware, 18 U.S.C. § 3142(g) enumerates four factors that the Court should analyze in determining whether to detain the defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. Each of these factors weighs in favor of pretrial detention in this case.

A.     **The Nature and Circumstances of the Offenses Weigh in Favor of Detention**

The Nature and Circumstances of the charged offenses weigh heavily in favor of pretrial detention.  Defendant was arrested in Kansas after Trooper Krause discovered what was later determined to be 15.995 kilograms of cocaine inside a hidden compartment in the vehicle Defendant was driving. Defendant was charged in Kansas state court and released on bond.  Shortly thereafter,

Defendant was indicted in the United States District Court for the District of Kansas. A warrant for Defendant's arrest has been outstanding since July 12, 2022.

      **B.**    **The Weight of the Evidence Against the Defendant Favors Pretrial Detention**

      The evidence of both Defendant's guilt and his dangerousness to the community weigh heavily in favor of pretrial detention.  After being caught red-handed in the District of Kansas, Defendant admitted that the cocaine belonged to him, stating "it was me" to Trooper Krause immediately after the cocaine was discovered, and then reiterating "whatever you found, it was me" after waiving his <u>Miranda</u> rights following his arrest.

      **C.**    **The Defendant's History and Characteristics Weigh in Favor of Detention**

      Defendant's history and characteristics weigh in favor of detention.  Defendant was convicted of First Degree Assault and Con-Robbery in the Circuit Court for Frederick County, Maryland, Case Number 10-K-14-054299.  On July 14, 2015, Defendant was sentenced on 25 years' imprisonment, with all but 3 years suspended, for First Degree Assault.  Defendant was sentenced to a consecutive term of 5 yearts' imprisonment for Con-Robbery, with all of that sentence suspended.  Defendant was placed on supervised release for a term of 3 years.

      In addition to that conviction, as reported in MPD CCN 19-080-807, Defendant was arresed on May 11, 2019, shortly after his release from Maryland State prison.  According to the report, MPD officers responded to a traffic accident in the 2300 block of Pennsylvania Avenue Southeast where they discovered that Defendant was the driver of a Hyundai sedan that had collided with another vehicle.  The officers spoke with Defendant while he was seated in the driver's seat of the vehicle. When they asked if Defendant had registration, Defendant stated it was in the glove compartment. Officers opened the glove compartment and discovered a .380 caliber Taurus handgun loaded with five rounds of .380 caliber ammunition in the bagazine.  Defendant was arrested and charged with

Carrying a Pistol Without a License.  D.C. Superior Court Search Warrant 2019 CSW 002716 was
sworn for the collection of a buccal swab for DNA comparison but the case was not charged.

      D.      **The Danger to the Community Created by Defendant's Release Weighs in
Favor of Detention**

As noted above, even if Defendant can present substantive evidence that overcomes the
rebuttable presumption in favor of pretrial detention in this case, the presumption remains a factor
for the Court's consideration because it "'reflects Congress's substantive judgment that particular
classes of offenders should ordinarily be detained prior to trial.'" Lee, 195 F. Supp. 3d at 125.
(quoting Stone, 608 F.3d at 945-46; Jessup, 757 F.2d at 387) (emphasis added).

The D.C. Circuit has noted that "'[w]hen the Government proves by clear and convincing
evidence that an arrestee presents an identified and articulable threat to an individual or the
community,'" pretrial detention is available to "'disable the arrestee from executing that threat.'"
United States v. Munchel, 991 F.3d 1273, 1280 (D.C. Cir. 2021) (quoting United States v. Salerno,
481 U.S. 739, 755 (1987)). This requires the Court to make a "forward looking determination" about
the Defendant's risk of danger to the community, keeping in mind that detention may be justified
even if the Court does not explicitly find that Defendant is a risk of committing acts of violence.
United States v. Hale-Cusanelli, 3 F.4th 449, 456 (D.C. Cir. 2021) (citing Munchel, 991 F.3d at 1283.

Defendant poses an obvious and articulable threat to the community as evidenced by his
recidivism as a trafficker in dangerous and highly addictive narcotics. Defendant, a wanted fugitive
since July 2022, was arrested in Washington, D.C. with distribution quantities of cocaine, cocaine
base, opiates, and amphetamines.  As the Court is aware, drug overdoses are at record highs. *See*
Overdose Death Rates, Revised May 14, 2024, National Institute on Drug Abuse
(https://nida.nih.gov/research-topics/trends-statistics/overdose-death-rates, last visited June 25,
2024).  As shown in the charts below, 57,497 people died from stimulant overdose in 2022, an

increase from all prior years since 1999. Also increasing is the mixture of stimulants with synthetic opioids such as fentanyl. There were 81,806 opioid overdose deaths rose in 2022, which also represents the highest number since 1999.



Figure 6. National Overdose Deaths Involving Stimulants (Cocaine and Psychostimulants*), by Opioid Involvement, Number Among All Ages, 1999-2022

*Among deaths with drug overdose as the underlying cause, the psychostimulants with abuse potential (primarily methamphetamine) category was determined by the T43.6 ICD-10 multiple cause-of-death code. Abbreviated to *psychostimulants* in the bar chart above. Source: Centers for Disease Control and Prevention, National Center for Health Statistics. Multiple Cause of Death 1999-2022 on CDC WONDER Online Database, released 4/2024.



Figure 3. National Overdose Deaths Involving Any Opioid*, Number Among All Ages, by Sex, 1999-2022

*Among deaths with drug overdose as the underlying cause, the "any opioid" subcategory was determined by the following ICD-10 multiple cause-of-death codes: natural and semi-synthetic opioids (T40.2), methadone (T40.3), other synthetic opioids (other than methadone) (T40.4), or heroin (T40.1). Source: Centers for Disease Control and Prevention, National Center for Health Statistics. Multiple Cause of Death 1999-2022 on CDC WONDER Online Database, released 4/2024.

13

## CONCLUSION

Defendant is eligible for pretrial detention pursuant to 18 U.S.C. § 3142(f)(1)(C), and this case involves a rebuttable presumption in favor of pretrial detention pursuant to 18 U.S.C. § 3142(e)(3)(A). Even if Defendant could present sufficient evidence to rebut the presumption, all four of the Bail Reform Act factors weigh heavily in favor of detention, and Defendant poses a substantial risk of dangerousness to the community if he is released pending trial in this case.

WHEREFORE, the United States respectfully requests that the Court issue an Order granting the United States' motion that the defendant be held without bond, and that he be transported to the District of Kansas pending trial.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:     */s/  James B. Nelson*
JAMES B. NELSON
D.C. Bar No. 1613700
Assistant United States Attorney
Federal Major Crimes Section
601 D. Street, N.W.
Washington, D.C. 20530
(202) 252-6986
james.nelson@usdoj.gov